## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ZION M., through his | : | |
| Parent, GABRIELLE M., | : | |
| of Upper Darby, PA 19082 | : | |
| | : | Civil Action |
| Plaintiff | : | |
| v. | : | |
| | : | No. |
| UPPER DARBY | : | |
| SCHOOL DISTRICT | : | |
| 4611 Bond Avenue | : | |
| Drexel Hill, PA 19026 | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

### I.  Preliminary Statement

1.     Zion M., a student with disabilities ("Zion" or "Student"), and his mother ("Parent"), Gabrielle M. (collectively "Plaintiffs" or "Family"), bring this action against Upper Darby School District ("Defendant" or "District"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, and its federal and state implementing regulations; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 and 794(a), and its federal and state implementing regulations; and Chapters 14 and 15 of the Pennsylvania Code.

2.     Zion is a rising eleventh-grade student with multiple disabilities who has resided in and attended District schools from kindergarten in the 2010-11 school year until eighth grade in 2018-19. He has significant disabilities involving attention, hyperactivity, impulsivity, self-regulation, frustration management, emotional dysregulation, compliance, task completion, organization, and interacting with peers, especially in larger groups. During his time in the District, Zion was the victim of severe bullying and exhibited academic, behavioral, social/emotional, and

executive functioning deficits. The District eventually found him eligible for a Section 504 Service Plan.

3.      Because the District's educational program did not meet Zion's needs, beginning in 2018-19 until the end of the 2020-21 school year (the period at issue before the Court), he attended private programs that offered smaller, more personalized learning environments, most recently at Cardinal O'Hara High School ("O'Hara"). The students at O'Hara did not bully him, and he progressed in all his areas of need with the supports and services there. The District funded Zion's tuition at O'Hara for the 2019-20 school year as part of a resolution of a similar special education due process complaint.

4.      In February 2020, Parent asked the District to evaluate Zion and offer an appropriate educational program for the 2020-21 school year. Contrary to its legal obligations, the District did not respond until August 2020 and did not evaluate him until after the start of the 2020-21 school year. In the meantime, without an evaluation, educational plan, or public-school placement, Parent notified the District that she would maintain Zion's placement at O'Hara and seek tuition reimbursement from the District.

5.      When the District finally did evaluate Zion, it incorrectly determined that he was ineligible for an Individualized Education Program ("IEP") under the IDEA and offered him an inadequate Section 504 Plan that failed to meet all of his needs.

6.      The Parent filed a due process complaint; after a hearing, a Pennsylvania hearing officer denied relief.

7.      The hearing officer's decision was erroneous because it: (1) inappropriately limited the Family's evidence at the hearing; (2) excused the District's failure to promptly evaluate Zion on the basis of the COVID-19 pandemic, contrary to law; and (3) failed to develop and offer a

2

timely and appropriate educational program to Zion for the 2020-21 school year under both the IDEA and Section 504.

8.     Well-settled precedent requires this Court to undertake an independent review of the record and the decision of the Hearing Officer. *Rowley v. Board of Educ.*, 458 U.S. 176, 206-07 (1982); *Susan N. v. Wilson School Dist.*, 70 F.3d 751, 759 (3d Cir. 1995).

9.     After fully considering the entire record, this Court should reverse the Hearing Officer's Decision and award appropriate relief to the Family for the District's educational failures.

## II.     Parties

10.     Zion was born in 2005 and, at all relevant times to this action, resided in Upper Darby, Pennsylvania, within the geographical boundaries of the District. Zion is an eligible student with disabilities under IDEA and a "qualified handicapped student" under Section 504.

11.     Gabrielle M. is Zion's Parent. At all times relevant to this action, she has resided with Zion in Upper Darby, Pennsylvania, within the geographical boundaries of the District.

12.     The Upper Darby School District is located at 4611 Bond Avenue, Drexel Hill, Pennsylvania. It is the recipient of several sources of federal funds and is an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries. Such services include those mandated under IDEA and Section 504. 24 P.S. Chapter 13; 22 Pa. Code Chapters 14 and 15.

## III.     Jurisdiction and Venue

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case raises federal questions under the IDEA and Section 504.

14.     Plaintiffs have exhausted administrative remedies where required under 20 U.S.C.

§ 1415(i), having litigated a special education due process complaint. 20 U.S.C. § 1415(i)(2)(A).

15.     20 U.S.C. § 1415 and 28 U.S.C. §§ 2201 and 2202 authorize Plaintiffs' claims and

remedies. These provide for declaratory and any further relief deemed necessary and proper.

16.     All the Defendant's actions complained of here have taken place within the

jurisdiction of the United States District Court for the Eastern District of Pennsylvania. Venue is

appropriate in this District pursuant to 28 U.S.C. § 1391.

**IV.    Additional Facts Supporting Liability**

17.     Zion is a 16-year-old rising eleventh-grade student who attended O'Hara High

School, a private licensed academic school in Springfield, Pennsylvania, during the time period at

issue.

18.     Before the start of the 2018-19 school year, Zion attended school in the District.

19.     Zion enrolled in the District as a kindergarten student during the 2010-11 school

year. In January 2012, in first grade, a private evaluator diagnosed him with Anxiety Disorder,

Attention Deficit Hyperactivity Disorder ("ADHD"), and asthma.

20.     In his early elementary school years, Zion had difficulty with self-regulation and

frustration management, compliance, peer interactions, and attention. He exhibited regular angry

outbursts in the classroom, once even flipping a desk. Rather than initiating the evaluation process

to appropriately identify his disabilities and meet his needs, the District recommended that Zion

participate in a club for peers with similar social, emotional, and behavioral issues. The club did

not help. Zion continued to have difficulty in the classroom.

21.     During Zion's third-grade school year, Zion's wraparound agency through Medical

4

Assistance[1] conducted a comprehensive biopsychosocial evaluation which diagnosed him with ADHD (combined type); Mood Disorder (not otherwise specified); and poor peer relations. In school, Zion had difficulty with attention, hyperactivity, impulsivity, task completion, compliance, organization, and appropriately interacting with peers. Zion's mother asked the District to evaluate him for a disability, but the District denied her request.

22.      Academically, Zion struggled. On his fourth-, fifth- and sixth-grade PSSAs,[2] he obtained a "Basic" score in math.[3] Similarly, his report cards described his challenges with math, written expression, organization, attention, impulsivity, self-control, and social skills.

23.      During Zion's middle-school years, his social, emotional, behavioral, and executive functioning needs increased as he transitioned to the District's larger middle school environment at Beverly Hills Middle School. As a sixth-grader, Zion called out in class, disturbed peers, and engaged in peer altercations. He also demonstrated signs of anxiety and emotional dysregulation. However, the District still did not evaluate him for disabilities.

24.      Alarmed at her son's regression and evident anxiety, Parent met with District

---

[1] Wraparound services are individualized Behavioral Health Rehabilitative Services ("BHRS") provided in the home, school, or community, to help keep a child at home when he or she is experiencing needs that endanger that stability, e.g., emotional or behavioral problems such as poor anger management or difficulties getting along with other children.  These services are provided through a Behavioral Health Managed Care Organization via Medical Assistance. *See* https://www.phlp.org/uploads/attachments/ck33h5j3h06zv51u8tvkn9saf-wraparound-services-guide-2011.pdf

[2] "The annual Pennsylvania System School Assessment [PSSA] is a standards-based, criterion-referenced assessment which provides students, parents, educators and citizens with an understanding of student and school performance related to the attainment of proficiency of the academic standards." *See* https://www.education.pa.gov/K-12/Assessment%20and%20Accountability/PSSA/Pages/default.aspx

[3] PSSA scores are organized into four groups: Advanced, Proficient, Basic, and Below Basic. *See* https://www.stateboard.education.pa.gov/Documents/About%20the%20Board/Board%20Actions/2015/PSSA%20Cut%20Scores.pdf The Basic level is lower than grade/age level.

personnel. On or about February 6, 2017, Parent requested a multidisciplinary evaluation. The District again inexplicably declined. Instead, it offered a Section 504 Service Plan, dated March 22, 2017, based on Zion's ADHD and Unspecified Anxiety Disorder. Parent asked the District to reconsider its refusal to evaluate, but the District again denied her request.

25.     On or about April 19, 2017, Parent asked the District to pay for a private, independent, neuropsychological educational evaluation. The District finally agreed to evaluate Zion, but it waited more than one month, until May 25, 2017, to issue a Permission to Evaluate ("PTE") form. Due to the summer break, its delay meant that the Evaluation Report ("ER") was not issued until the following school year, in October 2017, when Zion was in seventh grade.

26.     By this time, Zion was anxious, bullied, and frequently involved in altercations. Concerned for his safety, Parent opted to enroll him in the District's Cyber Academy for the fall semester of the 2017-18 school year while she awaited the results of the District's evaluation.

27.     The District's October 15, 2017, ER erroneously found Zion ineligible for an IEP, citing his performance in the cyber program. However, Zion did not perform well in that program. He returned to the District's public schools in January 2018, where he continued to exhibit the same difficulties with executive functioning, academic, social, emotional, and behavioral needs.

28.     Parent obtained legal counsel and filed a special education due process complaint, which resulted in a settlement agreement dated July 10, 2018.

29.     Beginning in eighth grade (2018-19), and until the end of the school year in question here (2020-21), Zion attended private programs that offered smaller class size and a greater degree of individualized attention, initially at Holy Cross Catholic School for eighth grade, then O'Hara for ninth and tenth grades, utilizing funds obtained through that agreement. The intimate learning setting and absence of disability-based bullying immediately reduced Zion's

anxiety and incidents of inappropriate behaviors. He continued to make excellent progress in O'Hara's smaller learning environment, improving his self-confidence.

30.     At O'Hara, Zion received one-on-one tutoring and support from the Delaware County Intermediate Unit ("DCIU") for math as needed. Zion finished the 2019-20 school year with a 3.71 GPA. Teachers reported Zion showed an enthusiasm for learning and is a pleasure to have in class. He no longer exhibited inappropriate behaviors. O'Hara promoted Zion's academic, emotional, and social development in preparation for post-secondary education.

31.     On February 27, 2020, Parent contacted the Principal of Upper Darby High School and asked the District to complete an evaluation and offer an educational program for the then-upcoming school year. The Principal acknowledged receiving the Parent's request.

32.     On June 26, 2020, Parent's attorney wrote to the District's attorney, asking again about the February request, and attempting to resolve this matter amicably, as four months had passed since Parent's request for an evaluation. The District sought verification of residency, which Parent provided.

33.     With no evaluation or educational program in place, the parent sent a notice to the District on August 14, 2020, asking the District to continue to fund Zion's educational program at O'Hara.

34.     On August 20, 2020, the District finally issued a PTE form. Parent signed and returned it the following day.

35.     Parent met with the District team on September 3, 2020, when the District issued a Section 504 Plan even before it had conducted and issued its 2020 ER.

36.     The September 3, 2020, Section 504 Plan acknowledged Zion's diagnoses of Anxiety and ADHD; that at O'Hara, Zion received one-on-one tutoring supports from the DCIU

7

and his teacher; and Parent's report that Zion benefits from smaller class sizes, which diminish the issues he had with peer interactions while in District programming. However, the supports the District offered were not individualized, such as preferential seating, "reminders" of appropriate behavior and to stay on task, and a single "accommodation": "the opportunity to seek out support from a counselor and social worker as needed[,]" which is something that any regular education student can access.

37.     The District produced its ER on October 24, 2020. It included Parent input noting Zion's diagnoses of ADHD, asthma, ongoing attention difficulties, anxiety which increases in large-group settings, and Zion's feelings of depression because of COVID-19.

38.     Included in the October 2020 ER were reports from Zion's teachers at O'Hara, noting he was a pleasure to have in class. Zion's Government teacher noted he required individualized attention and reminders to raise his hand/wait for directions before taking action. Zion's Theology and Algebra II teachers reported his lack of focus and need for redirection to tasks. Zion's English Language Arts ("ELA") teacher stated that Zion benefits from a small classroom environment. Zion had no discipline referrals during the 2020-21 school year.

39.     Test scores of Zion's cognitive abilities included in the ER revealed weaknesses in visual/spatial and processing speed. Academic achievement testing demonstrated discrepancies in math computation and a below-average score in written expression. The ER included parental rating scales that reflected notable concerns with bullying victimization, panic attacks, a specific phobia, anxiety, and vocal/motor tics; teacher rating scales reflecting concerns with math performance, perfectionist/compulsive behaviors, and social problems; and Zion's self-report recognizing that his behaviors have an impact on his academics.

40.     Parent, teachers, and Zion also completed scores on an Executive Functioning

8

Inventory. Parent rated Zion's skills as below average in attention, emotion regulation, inhibition control, planning, and self-monitoring. His math teacher reported concerns with organization, managing money, following instructions, retaining essential information, and expressing thoughts in an effective manner, while his ELA teacher reported deficits in emotional regulation, organization, attention, working memory, planning, inhibitory control, and initiation.

41.     Although the ER and record show that Zion is eligible per the IDEA under the classifications of Specific Learning Disability ("SLD") and Other Health Impairment ("OHI"), the District's October 2020 ER erroneously determined that he was ineligible for an IEP despite his significant weaknesses in academic performance, skills of executive function, and social/emotional concerns reported by parent and teachers.

42.     Further, the October 2020 ER failed to acknowledge that Zion's success and progress at O'Hara was due to the smaller school, absence of disability-based bullying in a more supportive school culture, and teachers' ability to provide him with the individualized attention he requires to progress in an academic environment.

43.     The District's proposed program for the 2020-21 school year was very late and, when finally offered, inappropriate. Under the circumstances, the parent had no choice but to retain Zion in the successful program where he had made meaningful progress across all areas and was on track to graduate with peers with whom he had finally formed meaningful relationships. Given that appropriate school environment, Zion's academic, social, emotional, and behavioral progress was remarkable. Moreover, he was not subject to the cruel bullying he endured while in the District.

44.     Therefore, Parent filed a due process complaint. After a two-day evidentiary hearing, during which the Hearing Officer erroneously prohibited the Family from introducing key

evidence, Pennsylvania Due Process Hearing Officer Cheryl Cutrona denied relief in a Decision on April 5, 2021, that is legally and factually erroneous.

45.    The Family respectfully requests that this Court reverse the Decision and: (1) find that the District failed under the IDEA and/or Section 504 to timely and appropriately evaluate and program for Zion during the time period alleged by the Parent; (2) order the District to identify Zion as eligible per the IDEA under the classifications of SLD and OHI; and (3) order the District to reimburse the Family for Zion's tuition and related costs at O'Hara High School for the 2020-21 school year, and until such time as the District offers Zion an appropriate program and placement.

## V.    **Statutory Authority**

46.    The IDEA provides that an aggrieved party has the right to bring a civil action in federal district court, which conducts an independent review of the administrative record and any additional evidence presented by the parties. *Shore Regional High School Bd. of Educ. v. P.S.*, 381 F.3d 194, 198 (3d Cir. 2004); 20 U.S.C. § 1415(i)(2); 34 C.F.R. § 300.516(c)(3).

47.    The purpose of the IDEA is to ensure that "all children with disabilities have available to them a free and appropriate public education ["FAPE"] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A); *Endrew F. v. Douglas County School Dist. RE-1*, 137 S. Ct. 988 (2017). IDEA and the regulations thereunder, 34 C.F.R. §§ 300.100 *et seq.*, and 22 Pa. Code Chapter 14, require that public school districts provide disabled children with a FAPE, as well as extensive due process procedures to effectuate that right.

10

> The IDEA protects the rights of disabled children by mandating that public educational institutions identify and effectively educate those children or pay for their education elsewhere if they require specialized services that the public institution cannot provide. Accordingly, schools must: (1) identify children in need of special education services (Child Find); and (2) provide a FAPE to disabled students.

*D.K. v. Abington Sch. Dist.,* 696 F.3d 233, 244 (3d. Cir. 2012) (internal citation and quotation omitted). The mechanism employed to achieve this objective is the IEP. 20 U.S.C. § 1412(4). A FAPE must be provided "under public supervision and direction, ... meet the standards of the State educational agency, ... include an appropriate preschool, elementary school, or secondary school education in the State involved ... [and must be provided at] no cost to Parent." *Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524-25 (2007) (citing 20 U.S.C. § 1401(9) and (29)).

48.     A student's educational program must be judged by whether it is reasonably calculated to enable the child to receive meaningful educational benefit considering the child's *particular* circumstances, including the *social, emotional and physical* progress necessary to move the child towards independence and self-sufficiency consistent with the child's cognitive potential. *Endrew F.*, 137 S.Ct. at 1001; *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 557 (3d Cir. 2010).

49.     School districts have a continuing obligation under the IDEA to timely evaluate and identify all students who are "reasonably suspected of a having a disability." *Ridgewood Bd. of Educ. v. N.E.*, 172 F.3d 238, 253 (3d Cir. 1999); 20 U.S.C § 1412(a)(3)(A) and (B). This is IDEA's "Child Find" obligation. A District must identify and evaluate a child suspected of having a qualifying disability "within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability." *W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir 1995), *abrogated on other grounds, A.W. v. Jersey City Public Schools*, 486 F. 3d 791 (3d Cir. 2007).

50.     IDEA requires school districts to offer an IEP for each child with a disability who

11

resides within its jurisdiction by the beginning of each school year. 20 U.S.C. § 1414(d)(2)(A); 34 C.F.R. § 300.323(a); *L.T. v. North Penn School Dist.*, 342 F.Supp.3d 610, 616 (E.D. Pa. 2018).

51.     A school district has an obligation to reevaluate all children residing in the district known to be eligible under the IDEA and to develop an IEP when a parent either: (1) enrolls an eligible child in the district of residence after a period of absence; *or* (2) requests that the district evaluate and/or offer the family a proposed IEP. *Id.*, 342 F.Supp.3d at 619; *Shane T. v. Carbondale Area Sch. Dist.*, 2017 WL 4314555 (M.D. Pa. 2017).

52.     Because a school district's obligation to offer FAPE derives from children's residency in the community, it must even offer IEPs to disabled students in private schools. The mandatory obligation to provide an offer of FAPE does not depend on enrollment in the public schools. *Shane T.*, 2017 WL 4314555 at *9; 34 C.F.R. § 300.131. Just "disabled status and residency" triggers the requirement. *Moorestown Twp. Bd. of Educ. v. S.D.*, 811 F. Supp. 2d 1057, 1077 (D.N.J. 2011) (collecting cases). A failure to offer an appropriate IEP or 504 Plan from the start of the school year will support tuition reimbursement. *Lauren G. v. West Chester Area School Dist.*, 906 F.Supp.2d 375, 395-96 (E.D. Pa. 2012) (court found that the school district was liable for tuition reimbursement under Section 504 for failing to offer the student a FAPE *prior to* the start of the student's 2009-10 school year); *Christen G. by Louise G. v. Lower Merion School Dist.*, 919 F.Supp. 793 (E.D. Pa. 1996) (failure to offer FAPE before start of school year entitled parent to tuition reimbursement).

53.     "[A] poorly designed and ineffective round of testing does not satisfy a school's Child Find obligation." *D.K. v. Abington Sch Dist.*, 696 F.3d at 250 (citing *G.D. ex rel. G.D. v. Wissahickon Sch. Dist.*, 832 F.Supp.2d 455, 465–67 (E.D. Pa. 2011) (finding the school's reevaluation of an elementary student with significant behavioral problems was inadequate

because it overemphasized academic proficiency and assessed behavioral issues only cursorily).

Failing to meet Child Find requirements is a serious matter involving a substantive violation of

IDEA and Section 504, as no appropriate educational plan can be developed/offered absent a

proper, fully comprehensive evaluation. *Zakary M. by Donna M. v. Chester County Intermediate

Unit*, 1995 WL 739708 (E.D. Pa. 1995). It can deprive FAPE to a student whom the District should

have identified as disabled, entitling him or her to an appropriate equitable remedy (e.g.,

compensatory education, tuition reimbursement, etc.) accruing from the time the District should

first have suspected the disability. *Ridgewood*.

54.     The IDEA permits the parents of an eligible child with disabilities to seek

reimbursement for the costs associated with a private school placement unilaterally made by the

Parents, under certain circumstances. More specifically, federal regulations to the IDEA state:

> If the Parents of a child with a disability, who previously received special education and
> related services under the authority of a public agency, enroll the child in a private
> preschool, elementary school, or secondary school without the consent of or referral by the
> public agency, a court or a hearing officer may require the agency to reimburse the Parents
> for the cost of that enrollment if the court or hearing officer finds that the agency had not
> made FAPE available to the child in a timely manner prior to that enrollment and that the
> private placement is appropriate. A Parental placement may be found to be appropriate by
> a hearing officer or a court even if it does not meet the State standards that apply to
> education provided by the SEA and LEAs.

34 C.F.R. § 300.148 (c). The IDEA further defines "secondary school" as "a nonprofit institutional

day or residential school . . . that provides secondary education. . ." 34 C.F.R. § 300.36.

55.     The receipt of special education and related services through the public school

system is not a prerequisite for reimbursement. *Forest Grove School District v. T.A.*, 129 S. Ct.

2484 (2009). As such, the mere failure to make FAPE available to a student with a disability can

expose a district to a claim for tuition reimbursement. *Id.*

56.     Section 504 states, in part: "No otherwise qualified individual with a disability in

13

the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794.[4]

57.     Regulations implementing Section 504 require public schools to provide a FAPE to each qualified disabled student regardless of the nature or severity of his or her disability. 34 C.F.R. §§ 104.33(a), 104.33(b)(1). The substantive requirements of Section 504 in the education context are equivalent to the requirements under the IDEA. *James S. v. School Dist. of Phila.*, 559 F. Supp.2d 600, 620 (E.D. Pa. 2008) (citing *Molly L. v. Lower Merion School Dist.*, 194 F. Supp.2d 422, 426 (E.D. Pa. 2002)).

58.     While under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* only students with 13 specifically defined categories of disability are eligible, Section 504/Chapter 15 defines disability more broadly. The Chapter 15/Section 504/ADA analysis focuses on "a physical or mental impairment that substantially limits one or more major life activities," 42 U.S.C. § 12102(1) and 22 Pa. Code § 15.2, which, here, included multiple diagnoses including ADHD, Anxiety, and serious Emotional Dysregulation.[5]

---

[4] Pennsylvania implements the statutory and regulatory requirements of Section 504 at the state level through the enactment of Chapter 15 of the Pennsylvania Code, 22 Pa. Code § 15 *et seq.* ("Chapter 15"). Chapter 15 neither preempts not expands the rights and liabilities under Section 504, and therefore courts treat Chapter 15 as coextensive with Section 504. *See K.K. ex rel. L.K. v. Pittsburgh Pub. Schs.*, 590 Fed. Appx. 148, n.3 (3d Cir. 2014). The violations of Section 504 described here are therefore also violations of Chapter 15.

[5] Section 504 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, are interrelated. *See* 28 C.F.R. § 35.108 (a)(2)(i) (Section 504 regulation) ("The definition of 'disability' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA"). Section 504 looks to 29 U.S.C. § 705(20) for its definition

59.    A school may violate Section 504 independent of any violations of IDEA. *Lauren G. v. West Chester Area School Dist.*, 906 F.Supp.2d 375 (E.D. Pa. 2012) (granting tuition reimbursement for school district's failure to provide FAPE under Section 504 during period for which court found IDEA did not warrant relief).

60.    Section 504 also requires districts to provide disabled students a FAPE as part of Section 504's prohibition of discrimination. *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 (3d Cir. 2012) ("As under the IDEA, providing a FAPE in accordance with § 504 requires a school district to reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits.") (internal quotation marks omitted).

61.    Section 504 further requires that "a public elementary or secondary education program shall annually undertake to identify and locate every qualified handicapped person residing in the recipient's jurisdiction who is not receiving a public education and take appropriate steps to notify handicapped persons and their parents or guardians of the recipient's duty under this subpart." 34 C.F.R. §§ 104.32, 104.33, 300.111; *Ridgewood*, 172 F.3d at 253; *W.B. v. Matula*, 67 F.3d at 492. The District must timely identify and evaluate all children it has reason to suspect might have a disability. The District must also ensure that its evaluations to determine actual eligibility for services occur within a *reasonable time* after school officials know or should reasonably have known that the child is likely to have a disability. *Id.* at 501; *L.T. ex rel. B.T. v. Mansfield Twp. Sch. Dist.*, No. CIV.A.04-1381(NLH), 2009 WL 737108, at *7 (D.N.J. Mar. 17, 2009) (finding, in Section 504 context: "waiting until after the start of the school year to even

---

of individual with a disability: "any person who has a disability as defined in section 12102 of Title 42 [the ADA]." 29 U.S.C. § 705(20)(B).

contemplate the development of an educational plan[] constitutes reckless disregard of the school district's duty to provide B.T. with a free appropriate education. Moreover, the fact that the development of his educational plan was not undertaken until after the school year began, and only after the parent [contacted school], demonstrates that Defendant acted with deliberate indifference to B.T.'s right to his education.").

62.     To establish a violation of Section 504, a plaintiff must prove that: (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. *Ridgewood*,172 F.3d at 253.

63.     "When a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. However, it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability. It is the denial of an education that is guaranteed to all children that forms the basis of the claim." *Andrew M.*, 490 F.3d at 350.

64.     Tuition reimbursement is also an available remedy under Section 504, as well as under IDEA. *Molly L.*, 194 F. Supp. 2d at 429 n.7 ("Tuition reimbursement has been awarded in cases arising under both the Rehabilitation Act and IDEA.")

65.     In determining whether tuition reimbursement should be awarded to a parent, the courts have created the now well-established three-part analysis requiring a hearing officer or court to determine: (1) whether the program and placement offered by the school district at the time the child was enrolled in the private school was appropriate; (2) if not, whether the private school selected by the parents was appropriate; and (3) whether the equities in the case favor reimbursement. *Florence County School District Four, et al., Petitioners v. Shannon Carter*, 510

U.S. 7 (1993); *Burlington Sch. Committee v. Massachusetts Dept. of Educ.*, 471 U.S. 359 (1985);

*Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 248 (3d Cir. 1999).

66.     A failure to offer an appropriate IEP or 504 Plan from the start of the school year

will support tuition reimbursement. *Lauren G. v. West Chester Area School Dist.*, 906 F.Supp.2d

375, 395-96 (E.D. Pa. 2012) (court found that the school district was liable for tuition

reimbursement under Section 504 for failing to offer the student a FAPE *prior to* the start of the

student's 2009-10 school year); *Christen G. by Louise G. v. Lower Merion School Dist.*, 919

F.Supp. 793 (E.D. Pa. 1996) (failure to offer FAPE before start of school year entitled parent to

tuition reimbursement).


VI.     **THE HEARING OFFICER'S EERORS**

67.     Pursuant to the above standards, the District failed in its statutory duties to Zion

under both the IDEA and Section 504. The Hearing Officer erred in ruling otherwise and failing

to award tuition reimbursement as relief.

68.     First, the Hearing Officer inappropriately limited the Family's evidence at the

hearing by refusing to consider Zion's performance in the District under his previous 504 Plan due

to the prior settlement. Such evidence used for that purpose is not barred by the previous settlement

between the parties. His performance under that almost identical 504 Plan was highly relevant to

determine the appropriateness of the current 504 Plan as well as his eligibility. There is no rational

or permissible legal basis for the Hearing Officer to have excluded it. Similarly and relatedly,

although the District's ER that was introduced during the due process hearing included a review

of Zion's history in the District, it was only a selective and incomplete one. However, the Hearing

Officer prevented counsel for the Family from asking the Family witnesses, and the District

psychologist who complied the history in that ER, any questions about that, erroneously stating that it was irrelevant to the issue at hand (in addition to the alleged, but incorrect, rationale that the settlement agreement supposedly prohibited it). The fact that the IDEA requires a review of records as part of the evaluation process in and of itself demonstrates that such information is highly relevant to making an informed eligibility determination.

69.     Second, the Hearing Officer erroneously excused the District's failure to promptly provide a PTE form, and perform a prompt evaluation, on the basis of the COVID-19 pandemic. Neither the Pennsylvania Department of Education nor the United States Department of Education altered the District's obligation to provide prompt PTE forms and evaluations and the deadlines for doing so during the pandemic. A PTE should have been issued to the Family within ten days of Parent's written request. 22 Pa. Code § 14.123(c). Nothing can excuse the District's utter inaction from February 2020 until August 2020.

70.     Finally, the hearing evidence demonstrates that the District failed to develop and offer a timely and appropriate educational program to Zion for the 2020-21 school year under both the IDEA and Section 504.

71.     More specifically, the District belatedly and incorrectly concluded that Zion was ineligible under the IDEA, and therefore not entitled to an IEP.

72.     To be eligible for services under the IDEA, a student must meet the requirements of one or more of the 13 disability categories enumerated in the regulation, and by reason thereof require specially designed instruction. 34 C.F.R. §§ 300.8 and 300.306. Contrary to the Hearing Officer's Decision, the District's own evaluation demonstrates the Zion meets the criteria under the classifications of SLD and OHI.

73.     The District developed and offered Zion no program at all under the IDEA, and as

such he was *per se* denied FAPE. Moreover, to the extent the District developed a Section 504

Plan, it was neither timely nor appropriate.

74.     The IDEA generally defines a SLD as ". . .a disorder in one or more of the basic

psychological processes involved in understanding or in using language, spoken or written, that

may manifest itself in the imperfect ability to listen, think, speak, read, write, spell, or to do

mathematical calculations, including conditions such as perceptual disabilities, brain injury,

minimal brain dysfunction, dyslexia, and developmental aphasia." 34 C.F.R. § 300.8(c)(10). The

regulations go on to explain the criteria for determining the presence of an SLD as follows:

> The child does not achieve adequately for the child's age or to meet State-approved grade-
> level standards in one or more of the following areas, when provided with learning
> experiences and instruction appropriate for the child's age or State-approved grade-level
> standards:
>
> > (i) Oral expression.
> > (ii) Listening comprehension.
> > (iii) Written expression.
> > (iv) Basic reading skill.
> > (v) Reading fluency skills.
> > (vi) Reading comprehension.
> > (vii) Mathematics calculation.
> > (viii) Mathematics problem solving.

34 C.F.R. § 300.309(a)(1). In other words, as acknowledged by the District's school psychologist,

one looks for a significant discrepancy between the Student's intellectual ability and academic

achievement in one of the above eight areas as demonstrated on standardized testing.

75.     The Hearing Officer erroneously concluded that Zion does not have a SLD.

However, a comparison of Zion's overall solid average cognitive ability to his depressed academic

achievement established significant discrepancies in math calculation and written expression. The

District and Hearing Officer essentially ignored these significant discrepancies in their analyses.

The school psychologist tried to dismiss the more glaring and significant discrepancy seen in

Zion's math calculation score by asserting that since he did well in *one* aspect of math problem-solving, his score in the fundamental area of math calculation somehow does not matter. That is inaccurate and inconsistent with the regulations. A SLD can exist in any of the eight areas of identified in the regulations – including in math calculations -- independent of whether or not an SLD exists in any other area. 34 C.F.R. § 300.309(a)(1). The District therefore should have identified Zion as eligible under the classification of SLD.

76.    For the classification of OHI, the District's ER properly identified Zion's ADHD and Anxiety Disorder. However, the ER and the Hearing Officer wrongly concluded that Zion did not demonstrate a need for Specially Designed Instruction ("SDI") because of either ADHD or Anxiety.[6] For example, on input forms, Zion's current teachers report that he struggles with attention and focus in the classroom, that he calls out, that he needs to improve his self-discipline, he can be disruptive, rushes through work, is not prepared with materials, needs redirection, needs individualized attention, has social difficulties, and benefits from smaller class size. Parent raised similar academic, emotional, and behavioral concerns in her input. Likewise, on behavioral and executive functioning rating scales, teacher response indicated concerns with helplessness and social problems and noted that Zion very often appears disorganized, forgets instructions, needs instruction repeated, and only sometimes manages tasks and his time effectively. Parent rating scales also indicate concerns with Anxiety, impulse control, attention, regulations, planning, self-monitoring, organization, and working memory.

77.    The ER and Decision concluded that Zion does not need SDI primarily because he

---

[6] "An IEP must consist of a detailed written statement arrived at by a multi-disciplinary team specifying the services, including specially designed instruction, that the child will receive." *See Ridley Sch. Dist. v. M.R.*, 680 F.3d at 274 (citing *Polk*, 853 F.2d at 173).

earns good grades. However, it is well settled that "education" under IDEA extends beyond discrete academic skills, and includes the *social, emotional, behavioral*, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential. *M.C. v. Central Regional School Dist.*, 81 F.3d 389, 393-394 (3d Cir. 1996); *Ridgewood*, 172 F.3d at 247.

78.     The Hearing Officer relied on positive comments made by Zion's teachers and his grades. While it is certainly true that teacher input included some positive statements about Zion, they do not negate Zion's struggles and/or needs. Teachers do not have to view a student in a negative light for that student to be eligible under the IDEA. Similarly, passing, or even good or excellent grades are not a disqualifier for eligibility under the IDEA and do not indicate the absence of disability. *Endrew F.* Courts in this District and Circuit have cautioned against focusing on a student's academic progress while ignoring behavioral, emotional, and social needs. *Polk*, 853 F.2d at 182 ("[The student's] progress cannot be measured by advancement in grade or acquisition of academic skill. His needs are drastically different, but no less important."); *E.P. by & through Allison H.-P. v. Twin Valley Sch. Dist.*, ___F.Supp.3d ____, No. CV 20-2078, 2021 WL 365878 (E.D. Pa. Feb. 3, 2021) (Rice, M.J., presiding by consent) (granting relief, in a remarkably similar case, to academically gifted student with serious non-academic disabilities including social, behavioral, and Anxiety exacerbated by bullying); *Norristown Area School Dist. v. Frank C.*, 2014 WL 11370484, *6 (E.D. Pa. 2014), *aff'd*, 636 Fed. Appx. 857 (3d Cir. 2016) (district denied FAPE by failing to provide for student's behavioral needs; FAPE includes "behavioral, social and emotional" aspects) (quoting *Breanne C. v. Southern York County School Dist.*, 732 F. Supp. 2d 474, 483 (M.D. Pa. 2010)); *Jana K. ex rel. Tim K. v. Annville-Cleona Sch. Dist.*, 39 F. Supp. 3d 584, 595 (M.D. Pa. 2014) ("It is well settled that, in this context, [FAPE] extends beyond discrete

21

academic skills and includes the social, emotional, and physical progress necessary to move the child toward meaningful independence and self-sufficiency consistent with the child's cognitive potential").

79.     The data in the District's own evaluation demonstrated that Zion is eligible under the IDEA as a child with both an SLD and an OHI, though it inexplicably found otherwise. By failing to find him eligible, the District also failed to develop and provide him with an IEP, and it thus denied Zion a FAPE *per se*. Accordingly, Parent met the *first* prong of the tuition reimbursement analysis under the IDEA.

80.     Even if this Court were somehow to find that Zion did not meet the criteria for eligibility under the IDEA, he was without question a student with a disability under Section 504. Thus, the District should have offered him FAPE under Section 504. However, the 504 Plan that the District provided him was neither timely nor appropriate. Thus, Parent met the *first* prong of the tuition reimbursement analysis.

81.     Parent respectfully requests that this Court reverse, based on the evidence of record. There is sufficient evidence of record to do so, despite the Hearing Officer's erroneous evidentiary rulings regarding the first prong that prevented Parent from presenting admissible evidence that would have altered the result on this prong, and despite the Hearing Officer's mistaken legal reasoning regarding the effect of the pandemic that worked to excuse what is actually inexcusable delay in issuing the PTE form and evaluating Zion. Alternatively, if the court were to find there is insufficient evidence of record to reverse, Parent respectfully requests that this Court reverse and remand to the administrative process for correction of these clear errors and for the presentation of the erroneously omitted evidence.

82.     Parent also met her burden on the *second* prong. A parent's burden to establish the

appropriateness of the private school at issue is not a heavy one, and the law affords considerable

leeway to the parent's choice of private school. More specifically:

> A parent's decision to unilaterally place a child in a private placement is proper if
> the placement is appropriate, i.e., it provides significant learning and confers
> meaningful benefit. That said, the parents of a disabled student need not seek out
> the perfect private placement in order to satisfy IDEA In fact, the Supreme Court
> has ruled that a private school placement may be proper and confer meaningful
> benefit despite the private school's failure to provide an IEP or meet state
> educational standards.

*Mary Courtney T. v. School District of Philadelphia*, 575 F.3d 235, 242 (3d Cir. 2009) (internal

citations and quotation marks omitted).

83.     Pursuant to these standards, the evidence clearly established that O'Hara is an

appropriate placement for Zion. Given that the Hearing Officer did not consider this prong, the

Family respectfully requests that the Court either determine it from the record or remand for

consideration of it.

84.     Zion's mother further met the *third* prong of the tuition reimbursement analysis. A

Hearing Officer may reduce or deny tuition reimbursement in one of three circumstances: (1)

where the parent failed to provide the District with written notice of her intent to withdraw her

child from the public schools and seek reimbursement for private placement; (2) where the public

school expressed its intent to evaluate the student at the time of withdrawal (through the issuance

of a Permission to Evaluate) and the parent failed to cooperate in the evaluation; and (3) where the

parent acted unreasonably. 34 C.F.R. § 300.148(d). In the present case, none of these apply. Parent

acted reasonably at all times, and there is no equitable basis to reduce or deny tuition

reimbursement. Similarly, the Family respectfully requests that the Court either determine it from

the record or remand for consideration of it.

85.     Because the District violated IDEA by failing to provide Zion a FAPE, it also

violated Section 504, and the Hearing Officer erred in not so ruling.

VII.   **CONCLUSION**

**WHEREFORE**, the Plaintiffs respectfully request that this Court:

1.   Assume jurisdiction over this action;

2.   Hear additional evidence pursuant to 20 U.S.C. § 1415(i)(2)(C)(ii);

3.   Remand to the administrative process to correct the clear errors of the Hearing Officer that prevented the introduction of admissible evidence and excused inexcusable delay;

4.   Reverse the Hearing Officer's Decision to the extent it finds that the Family is not entitled to tuition reimbursement and related costs for the school year at issue;

5.   Order the District to pay tuition reimbursement and related costs for Zion's 2020-21 school year, and until such time as the District offers FAPE;

6.   Order the Defendant to pay Plaintiffs their reasonable attorneys' fees and related costs;

7.   Declare the Defendant's actions and omissions to be violative of IDEA, Section 504, and Pennsylvania law; and

8.   Grant such other relief as this Court deems proper.

Respectfully submitted,

John W. Goldsborough, Esquire
ID No. 73063

Michael J. Connolly, Esquire
ID No. 82065

Dennis C. McAndrews, Esquire
ID No. 28012

24

McANDREWS, MEHALICK, CONNOLLY,
HULSE & RYAN, P.C.
30 Cassatt Avenue
Berwyn, PA 19312
(610) 648-9300 (phone)
(610) 648-0433 (fax)
Attorneys for Plaintiffs