IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ZION M., through his Parent,
GABRIELLE M.

                Plaintiff,

    v.

UPPER DARBY SCHOOL DISTRICT,

                Defendant.

CIVIL ACTION
NO. 21-2941

## OPINION

**Slomsky, J.**                                            **September 27, 2023**

## TABLE OF CONTENTS

I.   **INTRODUCTION** ........................................................................................................ 4

II.  **BACKGROUND** ......................................................................................................... 5

    A.   **Statutory Background** ........................................................................................ 5

        1.   Individuals with Disabilities Education Act ....................................................... 6

            a.   Individualized Education Plan ..................................................................... 6

            b.   Exhaustion of Administrative Remedies...................................................... 7

            c.   Remedies under the IDEA ........................................................................... 8

        2.   Section 504 of the Rehabilitation Act ................................................................. 8

        3.   Americans with Disabilities Act ......................................................................... 9

        4.   Remedies under Section 504 and the ADA........................................................ 10

    B.   **Factual Background** ........................................................................................ 10

1.   Parties ................................................................................ 10

2.   Educational History and Prior Settlement ............................ 11

3.   Zion's Evaluation and Ineligibility for an IEP .................... 11

4.   The Instant Action .............................................................. 13

III.   STANDARD OF REVIEW .......................................................... 14

IV.   ANALYSIS ................................................................................. 16

A.   **The Modified De Novo Standard Applies to Plaintiff's Section 504 and ADA Claims** ................................................................. 17

B.   **The Hearing Officer Correctly Found that Zion is Ineligible for an IEP Under the IDEA** ..................................................................... 19

1.   Zion was not Denied a FAPE by the District .................... 19

a.   The District Correctly Identified Zion as a Student with a Disability ....... 20

i.   Specific Learning Disability ............................... 20

ii.   Other Health Impairment ................................. 21

b.   The Hearing Officer Correctly Found that Zion does not need Specially Designed Instruction .............................. 22

c.   Zion was not Denied a FAPE due to the Delay in the District's Evaluation of Zion or the Issuance of the 504 Plan .................... 24

2.   The Hearing Officer Correctly Found that Parent is not Entitled to Tuition Reimbursement because Plaintiff was not denied a FAPE ............... 26

C.   **Section 504 and ADA Claims** ................................................. 26

1.   504 Claim ............................................................................. 26

  2. ADA Claim ........................................................................................ 29

**V.**  **CONCLUSION** .................................................................................. 29

## I.        INTRODUCTION

Before the Court is Plaintiff's Motion for Judgment on the Administrative Record.  (Doc. No. 20.)  Plaintiff Zion M., by and through his parent, Gabrielle M., ("Parent") initiated this action against Defendant Upper Darby School District (the "District") to appeal the decision of Pennsylvania Hearing Officer Cheryl Cutrona (the "Hearing Officer") following a Special Education Due Process Hearing.  (Doc. No. 20-3 at 2.)

Zion M. ("Zion") is a student with multiple learning disabilities.  (Id. at 4.)  As a first grader in the District, he was privately diagnosed with Unspecified Anxiety Disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), and asthma.  (Doc. No. 3-5 at 2.)  In third grade, he also was diagnosed with Mood Disorder-Not Otherwise Specified.  (Id. at 3.)  After seventh grade, Gabrielle M. removed Zion from the District and placed him in private school.[1]  (Id. at 5.)

In February 2020, in preparation for Zion's tenth grade year, Parent considered placing Zion back in the District high school and requested an evaluation of her son.  (Doc. No. 1 ¶ 4.)  The evaluation was delayed because of mandated school closures during the COVID-19 pandemic.  (Doc. No. 3-3 at 4.)  A week before the August start of classes in the District for the school year 2020-21, Parent informed the District that Zion would remain in private school and that she intended to seek tuition reimbursement.  (Id.)  In October 2020, the District finally conducted the evaluation.  (Id. at 5.)  After evaluating Zion, the District concluded that he did not qualify for an

---

[1] Pursuant to a confidential settlement agreement reached on July 10, 2018, the District funded a private high school Zion attended during the 2019-20 school year.  (See Doc. No. 3-3 at 3.)

Individualized Education Plan ("IEP").[2]  (Doc. No. 1 ¶ 5.)  Instead, the District offered a 504 Plan[3]

that Parent rejected because she believed it did not meet Zion's educational needs.   (Id.)

Consequently, Parent filed a due process complaint, which was followed by a hearing before the

Pennsylvania Hearing Officer.  (Id. ¶ 6.)  The Hearing Officer denied Parent's request for relief.

(Id.)

     Having reviewed the parties' briefing and the administrative record, this Court will affirm

the Hearing Officer's decision.  While it appears the Hearing Officer did err when assessing the

timeliness of both the Evaluation and 504 Plan, albeit for reasons associated with delays caused

by the COVID-19 pandemic, these procedural errors did not constitute a denial under the law of a

free, appropriate public education, or "FAPE," for Zion.  Consequently, Plaintiff's Motion for

Judgment on the Administrative Record (Doc. No. 20) will be denied and Plaintiff's Complaint

(Doc. No. 1) is dismissed.

## II.   BACKGROUND

### A.  Statutory Background

     The present dispute involves the application of several statutes.  Accordingly, a

discussion of the statutes at issue in this case is warranted.

---

[2] An Individualized Education Plan is a written plan developed for every public-school student
who requires special education.  It must include (1) present levels of academic achievement and
functional performance; (2) a statement of measurable annual goals; (3) how the child's
progress toward meeting the annual goals is to be measured; and (4) special education and
supplementary aids and services, as well as other details regarding how the IEP will be
implemented.  See § 1414(d)(1)(A)(i).

[3] A 504 Plan provides equal access to the general education curriculum for students with
disabilities.  It includes formalized accommodations that a disabled student may access if
qualified under the Rehabilitation Act of 1973.  See 29 U.S.C. § 794.

1.    Individuals with Disabilities Education Act

The first statute is the Individuals with Disabilities Education Act ("IDEA").  The IDEA was enacted to "make available a free and appropriate public education to all children with disabilities residing within [the state's] borders."  D.S. v. Bayonne Bd. Of Educ., 602 F.3d 553, 556 (3d Cir. 2010).  This requirement is enforced through contingent federal funding to State Educational Agencies ("SEAs") and Local Educational Agencies ("LEAs").  See 20 U.S.C. §§ 1412, 1413.  Eligibility for funding to educate students with disabilities is conditioned upon submission of a Plan demonstrating state compliance with the IDEA.  See id.  Here, it is undisputed that Defendant Upper Darby School District is a LEA receiving federal funding, and as such, it is bound to comply with the IDEA.

Pursuant to the IDEA, every eligible disabled student must be afforded a free and appropriate public education: a "FAPE."  However, what constitutes a FAPE depends upon the individual needs of each child.  The statutory definition of a FAPE includes "special education," or a specifically designed instruction meeting the unique needs of the disabled child, and "related services" or support services required to help the child benefit from the instruction.  See Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. 386, 391 (2017) (citing §§ 1401(26), (29)).  To implement these statutory requirements, a state must provide each child with an Individualized Education Plan—or IEP—which is "the means by which special education and related services are tailored to the unique needs of a particular child."  Id. (internal quotation marks omitted); see also §§ 1412(a)(4), 1414(d).

a.    Individualized Education Plan

The IEP is "the centerpiece of the [IDEA]'s education delivery system for disabled children," and it must be "reasonably calculated to enable a child to make progress appropriate in

light of the child's circumstances." See Endrew F., 580 U.S. at 394 (internal citations omitted). The IEP must provide the student with a "basic floor of opportunity," but need not rise to the level of providing the student with "the optimal level of services" or grant all the parents' requests. D.S., 602 F.3d at 557. As noted, every IEP must include: (1) present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) how the child's progress toward meeting the annual goals is to be measured; and (4) special education and supplementary aids and services, as well as other details regarding how the IEP will be implemented. See § 1414(d)(1)(A)(i); see also N.H. by & through S.H. v. Phoenixville Area Sch. Dist., No. CV 21-1066, 2021 WL 5998445, at *1 (E.D. Pa. Dec. 20, 2021).

A Local Education Agency, such as the District, develops the IEP. To do so, the child's parents and school personnel work together to identify the student's needs and to develop a plan to achieve educational goals. As noted by the Supreme Court, "parents play[] a 'significant role' in this process." Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524 (2007). A child's IEP "should evolve with the child's development and should be continually revised as appropriate." Charlene R. v. Solomon Charter Sch., 63 F. Supp. 3d 510, 513 (E.D. Pa. 2014) (citing § 1414(d)(4)). And the assessment of the IEP's contents and implementation is crucial to the determination of whether a child was either provided or denied a FAPE.

b.   Exhaustion of Administrative Remedies

For a district court to have subject matter jurisdiction over a claim pursuant to the IDEA, a claimant must first exhaust the administrative remedies available under the statute. See Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014) (citing Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994)). This requirement "encourage[s] parents and the local school district to work together to formulate an IEP for a

child's education." <u>Batchelor</u>, 759 F.3d at 275.  Administrative remedies under the statute involve

filing a complaint with the child's LEA and corresponding SEA and participating in a due process

hearing.  <u>Id.</u> at 272; <u>see also</u> §§ 1415(a), (b)(6)(A), (f)(1)(A).  "Upon receipt of a proper due

process complaint, the SEA assigns the matter to a special education hearing officer who schedules

a due process hearing." <u>T.L. by & through Latisha G. v. Pa. Leadership Charter Sch.</u>, 224 F. Supp.

3d 421, 425 (E.D. Pa. 2016).  At the close of the hearing, the hearing officer will enter a decision.

If either the child's parents or the LEA are dissatisfied with the decision, they "have the right to

bring a civil action with respect to the [due process] complaint . . .  in a State court of competent

jurisdiction or in a district court of the United States," as Plaintiff has done in this case.  <u>See id.</u> at

425.

### c.    Remedies under the IDEA

One remedy available under the IDEA is tuition reimbursement. Tuition reimbursement is

appropriate when parents decide to place their child in a private school due to the denial of a FAPE

at the public school.  <u>Forest Grove Sch. Dist. v. T. A.</u>, 557 U.S. 230, 247 (2009).  In the Third

Circuit, it is unclear whether tuition reimbursement is considered an equitable remedy.

Compare <u>T.F. v. Fox Chapel Area Sch. Dist.</u>, 589 F. App'x 594, 599 (3d Cir. 2014) (holding tuition

reimbursement is form of compensatory damages) with <u>Lauren G. ex rel. Scott G. v. W. Chester

Area Sch. Dist.</u>, 906 F. Supp. 2d 375, 391 (E.D. Pa. 2012) (referring to tuition reimbursement as

an equitable remedy) and with <u>A.S. v. Colonial Sch. District.</u>, No. CV 21-3952, 2022 WL 2669168,

at *4 (E.D.Pa. July 11, 2022) (assessing tuition reimbursement as an equitable remedy).

### 2.    Section 504 of the Rehabilitation Act

The Rehabilitation Act ("RA") prohibits discrimination on the basis of disability in

programs receiving federal funding, including schools. Section 504 of the RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794(a).  Further, Section 504 has its own FAPE requirement.  Consistent with its obligations under Section 504, a school "must reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits."  Ridley Sch. Dist. v. M.R., 680 F.3d 260, 280 (3d Cir. 2012) (citing J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 70 (2d Cir. 2000)).  Pursuant to Section 504, parents may bring a claim under the same facts asserted in an IDEA claim, and they may bring both claims concurrently, as Plaintiff has done here.  In accordance with these similarities, in most circumstances, establishing the denial of a FAPE suffices to establish a Section 504 claim.  M.D. v. Colonial Sch. Dist., 539 F.Supp.3d 380, 397-98 (E.D. Pa. May 13, 2021).

### 3.    Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") also provides a remedy for disabled students and their parents regarding a child's public education.  The ADA "extends the nondiscrimination rule of Section 504 of the Rehabilitation Act to services provided by any public entity without regard to whether the entity is a recipient of federal funds."  Jeremy H. by Hunter v. Mount Lebanon Sch. Dist., 95 F.3d 272, 279 (3d Cir. 1996) (internal quotation marks and parentheses omitted).  This extension to a "public entity" applies regardless of whether the entity receives federal funding.  For claims under Section 504 and the ADA that may be brought under the IDEA— even where the claimants do not concurrently bring an IDEA claim—parents must still exhaust administrative remedies available under the IDEA.  Congress requires Section 504 and ADA

claimants to go through the IDEA administrative process when the "parties could have asserted the claims under the IDEA."  See 20 U.S.C. § 1415(l); Batchelor, 759 F.3d at 273.

> 4.  Remedies under Section 504 and the ADA

Under Section 504 and the ADA, it is unclear whether parents must additionally prove intentional discrimination to receive tuition reimbursement under Section 504 and the ADA. Compare Lauren G., 906 F. Supp. 2d at 390–91 with Sch. Dist. of Phila. v. Kirsch, 722 F. App'x 215, 228 (3d Cir. 2018) (not precedential) (holding parents must prove "deliberate indifference" to obtain tuition reimbursement under Section 504 and the ADA).  In any event, at the very least, it appears they must prove a denial of a FAPE. See Coleman v. Pottstown Sch. Dist., 983 F. Supp. 2d 543, 568 (E.D. Pa. 2013).

> **B.  Factual Background**[4]

> 1.  Parties

Plaintiff Zion is a student diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), anxiety, and Mood Disorder not otherwise specified.  (Doc. No. 1 ¶ 1.)  Plaintiff Gabrielle M. is Zion's mother.  (Id. ¶ 11.)  Defendant Upper Darby School District is classified as "an educational agency designated by Pennsylvania law and the Pennsylvania Department of Education for the provision of educational services to individuals residing within its boundaries."  (Id. ¶ 12.)  To assist in this educational mission, Defendant receives federal funds.

---

[4]   After review of the administrative record in this case, except for the timing of the Evaluation of Zion and the issuance of the 504 Plan, the Court has made no findings of fact that are contrary to the findings of fact in the decision of Pennsylvania Special Education Hearing Officer Cheryl Cutrona.

(Id.)  Zion and his mother are residents of Upper Darby, Pennsylvania, which qualified them to enroll Zion in Defendant's public school system.[5]  (Id. ¶ 10-11.)

### 2.    Educational History and Prior Settlement

In 2010, Zion enrolled in the public school system for his kindergarten year.  (Id. ¶ 19.) While in first grade, he was diagnosed with Anxiety Disorder, ADHD, and asthma.  (Id.)  As a result, Zion faced challenges at school with "self-regulation and frustration management, compliance, peer interactions, and attentions" and frequent emotional outbursts.  (Id. ¶ 20.)  Zion attended schools in the District from kindergarten through seventh grade.  (Id.)  During Zion's middle school years, he continued to need educational and social-emotional support.  (Id.)  The District found Zion eligible for a Section 504 Plan, which provides accommodations for students with disabilities to better access the general education curriculum.  (Id.)  Parent was dissatisfied with the District's proffered education program, so she enrolled Zion in a private school, Cardinal O'Hara High School ("Cardinal O'Hara").  (Id. ¶ 3.)  On July 10, 2018, Parent and the District reached a confidential settlement requiring the District to fund Zion's education at Cardinal O'Hara for the 2019-2020 year.  (Id.)  Zion successfully completed ninth grade at Cardinal O'Hara, receiving no accommodations and achieving a 3.71 grade point average ("GPA").  (Doc. No. 3-3 at 4.)

### 3.    Zion's Evaluation and Ineligibility for an IEP

On February 27, 2020, in preparation for Zion's tenth grade year, Parent requested an evaluation of Zion because she was considering re-enrolling him in the District.  (Id.)  Less than a month later, in response to the global COVID-19 pandemic, Pennsylvania Governor Thomas Wolf

---

[5]   Plaintiffs do not state how long they have been residents of Upper Darby, but represent that they have resided in the District "[a]t all times relevant to this action."  (Doc. No. 1 ¶¶ 10, 11.)

issued a statewide mandate requiring Pennsylvania schools to shut down, precluding in-person testing.  (Id.)  By April 2020, the state of Pennsylvania was under a stay-at-home order issued by the Governor.[6]  Schools in the District were closed during 2020, engaging in newly instituted online learning programs.  On June 26, 2020, Parent informed the District that, for the next school year, she was seeking an "expedient resolution" and tuition reimbursement for attendance at Cardinal O'Hara High School.  (Doc. No. 3-3 at 4.)  On July 15, 2020, the District informed Parent that proof of residency was required to begin the evaluation process.  (Id.)  Approximately one month later, on August 11, 2020, Parent supplied the District with proof of residency documents. (Id.)  Three days after sending proof of residency, Plaintiff's parent emailed the District and stated that, apparently because of the delay, she had "no other option" but to enroll Zion in a private school.  (Id.)  She did so.  (Id.)  At that time, she also requested tuition reimbursement for Plaintiff's attendance there.  (Id.)  The first day of school in the District would not occur for more than a week, and classes at Cardinal O'Hara High School would not commence until September 9, 2020. (Doc. Nos. 3-3 at 22; 3-7 at 83.)

On August 31, 2020, the District issued its Permission to Evaluate Form, the next step in the evaluation process.  (Doc. No. 3-3 at 5.)  On or around September 3, 2020, following Zion's re-enrollment at Cardinal O'Hara, Plaintiff's parent met with the District, and the District offered a Section 504 Plan in the interim before the formal evaluation.  (Id.)  Parent rejected the 504 Plan.[7]

---

[6] Executive Order, April 1, 2020, https://www.hermitage.net/DocumentCenter/View/779/Gov-Wolf-Statewide-Stay-At-Home-Order.

[7] The initial 504 Plan consisted of multiple accommodations, including (1) "preferential seating in the classroom in the front of the room and/or near the point of instruction to allow for redirection and check ins as needed," (2) "a nonverbal redirection for non-serious offenses prior to attempting verbal redirection," (3) "regular reminders of appropriate classroom behavior," (4) a "social worker [to] collaborate with outside providers/agencies as needed," (5) "reminders not to rush through work and remain on task," (6) "the opportunity to seek out support from

(Id.)  On or around October 23, 2020, the District evaluated Plaintiff pursuant to the Individuals with Disabilities Education Act (the "IDEA") and determined Zion was ineligible for an Individualized Education Plan ("IEP").  (Id. at 6.)  Zion continued to be a student at Cardinal O'Hara High School throughout the 2020-21 school year.  (Id. at 2.)

### 4.   The Instant Action

On November 2, 2020, Parent filed a Due Process Complaint seeking tuition reimbursement for the cost of Zion attending Cardinal O'Hara High School during the 2020-21 school year and challenging the decision of the District that Zion was ineligible for an IEP under the IDEA.  (Id.)  On January 14 and February 12, 2021, a due process hearing was held before the Pennsylvania Hearing Officer.  (Doc. Nos. 3-7 at 1; 3-6 at 1.)  Agreeing with the District, the Officer determined that "the District did not fail to comply with its obligations to Student under the IDEA or Section 504, and no remedy is due or ordered."  (Doc. No. 3-3 at 24.)

On July 1, 2021, Plaintiff, through his Parent, filed this suit against the District seeking a reversal of the Hearing Officer's decision and tuition reimbursement for the 2020-2021 school year.  (Doc. No. 1 at 24.)  Specifically, Plaintiff alleges that the Hearing Officer erroneously concluded that the District was correct in its assessment that Zion was ineligible for an IEP and, as a result, failed to provide him with a Free Appropriate Public Education ("FAPE") in violation of the IDEA.  (Id. ¶ 70-73.)  In addition, Plaintiff alleges that the District provided Zion with an untimely, insufficient Section 504 Plan that failed to cater to his disabilities in violation of Section 504.  (Id. ¶ 80.)  Plaintiff also asserts claims under Chapter 14 and 15 of the Pennsylvania Code,

---

counselor and social work as needed," and (7) "while in the virtual setting, teachers will meet with Zion during Office Hours as needed to discuss accommodations and supports."  (Doc. No. 3-9 at 26.)  On December 8, 2020, following a full evaluation of Zion, the District revised the 504 Plan.  (See Doc. No. 3-3 at 6.)  Parent also rejected the revised 504 Plan.  (Id.)

which implements the IDEA and Section 504, respectively.[8]  (Doc. No. 20-3 at 2.)  On September 7, 2021, the Administrative Record from the Pennsylvania Department of Education, Office of Dispute Resolution was filed.  (Doc. No. 3.)  The following exhibits were attached: (1) a Protective Order Notice; (2) a Certification Request; (3) the Hearing Officer's Final Decision and Order; (4) the District's Closing Brief; (5) the Parent's Closing Brief; (6) the January 14, 2021 Hearing Transcript; (7) the February 12, 2021 Hearing Transcript; (8) the Exhibits referred to by the Hearing Officer in her Decision; (9) the District's Exhibits; (10) the Parent's Exhibits; (11) the District's Answer to Plaintiff's Due Process Complaint; and (12) a Due Process Complaint Letter requesting a special education due process hearing.  (See id.)

On December 23, 2022, Plaintiff, through his Parent, filed the instant Motion for Judgment on the Administrative Record.  (Doc. No. 20.)  On January 23, 2022, the District filed its Response in Opposition.  (Doc. No. 21.)  On February 6, 2022, Plaintiff filed its Reply.  (Doc. No. 24.)  Plaintiff's Motion is now ripe for a decision.

## III.    STANDARD OF REVIEW

Because parents and educators sometimes disagree about what a child's Individualized Education Plan, or IEP, should contain, the IDEA has established procedures to resolve disputes.  See Endrew F., 580 U.S. at 391-92.  "There are congressionally mandated administrative procedural safeguards to resolve disagreements between parents and school districts over the proper IEP for a child or other FAPE-related disputes."  Adult Q.T. v. Pottsgrove Sch. Dist., 70 F.4th 663, 664-65 (3d Cir. 2023) (citing C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 65 (3d Cir.

---

[8] See 22 Pa. Code § 14.102(a); 22 Pa. Code § 15.1(a); see also Ruari C. by & through Ronan C. v. Pennsbury Sch. Dist., No. CV 22-4080, 2023 WL 5339603, at n.1 (E.D. Pa. Aug. 18, 2023).

2010) (quoting 20 U.S.C. § 1412(a)(1)(A)).  The parties may resolve their differences informally, through a "[p]reliminary hearing," or, more formally, through mediation.  20 U.S.C. §§ 1415(e), (f)(1)(B)(i).  Additionally, the parties may proceed to a "due process hearing" before a state or local educational agency.  Id. §§ 1415(f)(g).

At the conclusion of the state due process hearing, the IDEA permits the losing party to appeal the decision to state or federal court.  Id. § 1415(i)(2)(A).  The district court reviews the record of the administrative proceeding, hearing additional relevant evidence at the request of a party, and, based on a preponderance of the evidence, grants appropriate relief.  Id. § 1415(i)(2)(C); see also Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995).  The district court gives "due weight" to the hearing officer's decision.  Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 205-06 (1982).

Affording "due weight" to the hearing officer's decision requires a district court to conduct a "modified de novo review" of the administrative proceedings.  Q.T., 70 F.4th at 666 (citing P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009)).  The United States Supreme Court has construed 20 U.S.C. § 1415(i)(2)(C) to require that a district court be careful to avoid replacing its "own notion[] of sound educational policy for those of the school authorities [that] they review."  Rowley, 458 U.S. at 206.  As such, "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"  Q.T., 70 F.4th at 666 (quoting P.P., 585 F.3d at 734) (citation omitted).  "Taking the [hearing officer's] factual findings as prima facie correct, [a court] must decide whether the record contradicts those factual findings."  S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 271 (3d Cir. 2003).  But the legal determinations of the

hearing officer are subject to plenary review by the district court.  See <u>A.C. v. Owen J. Roberts Sch. Dist.</u>, 554 F. Supp. 3d 620, 624 (E.D.Pa. 2021) (citing <u>S.H.</u>, 336 F.3d at 271)).

However, the parties disagree regarding the applicable standard of review for the Section 504 and ADA claims.  (Doc. No. 20-3 at 10; Doc. No. 21 at 3.)  Presently, District Courts in the Third Circuit are split as to the standard of review applying to Section 504 and ADA claims.  In <u>T.F.</u>, the Third Circuit declined to determine the standard of review which applies to 504 cases.

> The parties dispute whether the District Court should have applied a de novo standard of review or a modified de novo standard that gives deference to the factual findings of the Hearing Officer . . . We need not decide the issue of what standard applies because the result is the same under either standard. The <u>de novo</u> standard favors the Appellants, and therefore, we assume <u>arguendo</u> that the <u>de novo</u> standard applies.

589 F.App'x 594, 598 (3d Cir. 2014); <u>see also</u> <u>E.P. by & through Allison H.P. v. Twin Valley Sch. Dist.</u>, 517 F. Supp. 3d 347, 349 (E.D. Pa. 2021) (noting the split among district courts in the Third Circuit as to standard of review for stand-alone 504 cases).  For reasons elucidated below, the Court will apply the modified <u>de novo</u> standard of review not only to Plaintiffs' IDEA claims, but also to claims arising under Section 504 and the ADA.[9]

## IV.    ANALYSIS

First, the Court will address Plaintiff's argument that a "more searching" <u>de novo</u> standard of review should apply to the claims arising under Section 504 and the ADA.  (Doc. No. 20-3 at 10.) Next, the Court will examine Plaintiff's objections to the Hearing Officer's final decision on the

---

[9] The Parent also raises claims under Chapters 14 and 15 of the Pennsylvania Code.  (Doc. No. 20-3 at 2.)  Chapter 14 of the Pennsylvania Code adopts and implements the IDEA; Chapter 15 implements Section 504 of the Rehabilitation Act. <u>See</u> 22 Pa. Code § 14.102(a); 22 Pa. Code § 15.1(a); <u>see also</u> <u>A.W. ex rel. H.W. v. Middletown Area Sch. Dist.</u>, No. 1:13-CV-2379, 2015 WL 390864, at *10-15 (M.D. Pa. Jan 28, 2015) (holding Chapters 14 and 15 as coextensive with the IDEA and Section 504, respectively).

IDEA, Section 504, and the ADA claims.  In doing so, the Court will discuss whether Zion's Parent

is entitled to tuition reimbursement for the 2020-21 school year.

### A.  The Modified De Novo Standard Applies to Plaintiff's Section 504 and ADA Claims

Plaintiff argues that this Court should employ a "more searching de novo standard of

review for the Section 504 and ADA claims."  (Doc. No. 20-3 at 10.)  The Third Circuit has not

squarely determined the standard of review applying to Section 504 and ADA claims brought

concurrently with the IDEA's administrative process.  See T.F., 589 F.App'x at 598 (declining to

determine the standard of review applying to claims arising under Section 504); see also K.N. v.

Gloucester City Bd. of Educ., 379 F. Supp. 3d 334, 344 (D.N.J. 2019) ("The Third Circuit has yet

to determine whether . . . the modified de novo or de novo standard of review applies [when

addressing Section 504 and ADA claims].").  However, the text of the IDEA and current authority

indicate that the modified de novo standard applies not only to claims arising under the IDEA, but

also to claims arising under Section 504 and the ADA.

The IDEA states:

> [n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101–12213], Title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791–794f], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the [IDEA administrative process] shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).  Importantly, this means that "[e]xhaustion of the IDEA's administrative

process is also required in non-IDEA actions where the plaintiff seeks relief that can be obtained

under the IDEA."  Batchelor, 759 F.3d at 272.  As the Third Circuit noted, "[t]his provision bars

plaintiffs from circumventing the IDEA's exhaustion requirement by taking claims that could have

been brought under the IDEA and repackaging them as claims under some other statute—e.g., . . . [S]ection 504 of the Rehabilitation Act, or the ADA."  Id. at 272-73 (citing Jeremy H., 95 F.3d at 281).

Because Congress requires Section 504 and ADA claims in such cases to exhaust the IDEA administrative process, the Court deduces that Congress intended for the same procedural safeguards to apply to all three claims.  Further, the Supreme Court established the modified de novo standard for IDEA claims because "the very importance which Congress has attached to compliance with certain procedures ... would be frustrated if a court were permitted simply to set state decisions at naught."  Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty., 458 U.S. at 206.  Courts in this District have arrived at the same conclusion.  For example, in Yulia S. v. Hatboro-Horsham School District, the court held that the IDEA's modified de novo standard applied to the plaintiff's Section 504 and ADA claims:

> To hold otherwise would permit a trial court to ignore administrative findings about those claims, even after Congress required parties to present the claims to an administrative tribunal and after Congress required the parties to submit the record of administrative proceedings to the district court. That outcome would diminish, if not eliminate, the value of the administrative process that Congress has created and would make no sense . . . Instead, the Court will give 'due weight' to those underlying administrative proceedings to avoid 'substitut[ing] its own notions of sound educational policy for those of local school authorities.'

No. 2:21-cv-02011, 2021 WL 5298990, at *3 (E.D. Pa. Nov. 15, 2021) (quoting S. H. v. State-Operated Sch. Dist. of City of Newark, 336 F. 3d 260, 270 (3d Cir. 2003)).  This Court also concludes that a modified de novo standard applies to Plaintiffs' Section 504 and ADA claims, where due weight must be given to the Hearing Officer's findings.

**B. The Hearing Officer Correctly Found that Zion is Ineligible for an IEP under the IDEA**

1.  Zion was not Denied a FAPE by the District

The parties dispute here whether the Hearing Officer erroneously decided that Zion was ineligible under the IDEA for an IEP.  If he was eligible, the District's actions would have denied him a FAPE.  If he was ineligible, a FAPE was not denied by the District.  In the Motion for Judgment on the Administrative Record, Plaintiff contends that Zion was eligible for an IEP and that "[t]he Hearing Officer's conclusion that the School District offered Zion a FAPE was erroneous in many ways."  (Doc. No. 20-3 at 12.)  Defendant submits to the contrary that "Parent failed to meet her burden that Student . . . requires specially designed instruction.  Nothing in the record supports disturbing that well supported finding."  (Doc. No. 21 at 5.)

To be eligible for an IEP under the IDEA, a student must (1) have[] an intellectual disability . . . an other health impairment, [or] a specific learning disability . . ." and (2) "by reason thereof, need[] special education and related services."  C.F.R. 34 § 300.8(a)(1).  "Special education means specially designed instruction, at no cost to the parents, to meet the unique needs of a child with a disability."  CFR. § 300.39(a)(1).  Every IEP must include "an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide."  Ridley School Dist., 680 F.3d 260, 269 (3d Cir. 2012) (quoting Shaffer v. Weast, 546 U.S. 49, 53 (2005)).  The Hearing Officer concluded that:

> although the Student has medical diagnoses of ADHD and Anxiety, the evidence is insufficient to lead to a conclusion that Student requires adaptations of the content, methodology, or delivery of instruction because of a disability. IDEA eligibility is a two-part test, and the existence of a disability standing alone does not satisfy both prongs. The hearing officer finds that the Student does not meet the second prong because the preponderance of the evidence fails to prove that the Student needs

specially designed instruction to benefit from his education. As such, the Student does not meet the eligibility criteria under the IDEA.

(Doc. No. 3-3 at 19.)  After a review of the administrative record, the Court finds that the Hearing Officer did not err when finding that Zion was ineligible for an IEP.  Accordingly, the Court further concludes that Zion was not denied a FAPE by the District.

        a.   <u>The District Correctly Identified Zion as a Student with a Disability</u>

To be provided with an IEP, a student must meet a two-prong eligibility test: (1) the student must have a disability, and (2) the student must need special education services as a result of the disability.  <u>See</u> C.F.R. 34 § 300.8(a)(1).  Various types of disabilities are sufficient to establish the first prong of this test.  <u>See</u> <u>id.</u>  Two examples of disabilities which satisfy the first prong of the eligibility test are (1) a "specific learning disability" or "SLD," and (2) an "other health impairment" or "OHI."  <u>See</u> <u>id.</u>

        i.   <u>Specific Learning Disability</u>

Plaintiff argues that the School District should have identified Zion as having a specific learning disability  (Doc. No. 20-3 at 12.)  Specifically, Plaintiff contends that

> [t]he District should have identified Zion as eligible under the classification of Specific Learning Disability ("SLD") in math calculation and/or written expression because there are significant discrepancies between his intellectual ability and academic achievement in those areas.

(<u>Id.</u>)  The District submits that "[Zion's] good grades are consistent with the comprehensive and thorough testing and evaluation administered by the District- which does measure whether a child has a specific learning disability- and which did not indicate the presence of a specific learning disability."  (Doc. No. 21 at 8.)

Under the IDEA, a specific learning disability ("SLD") is

> a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, that may manifest itself in

the imperfect ability to listen, think, speak, read, write, spell or to do mathematical calculations . . .

34 C.F.R. § 300.8(c)(10).  The criteria for establishing the presence of a SLD includes determining whether "[t]he child does not achieve adequately for the child's age or to meet state-approved grade level standards . . . when provided with learning experiences and instruction appropriate for the child's age or state-approved grade level standards . . ."  Id. § 300.309(a)(1).

Here, the Hearing Officer correctly determined that Zion does not have a specific learning disability.  The administrative record reveals that the District conducted an Evaluation of Zion.  (See Doc. No. 3-3 at 16.)  The results were that Zion had "composite scores . . . primarily in the average and high average range."  (Id.)  Zion had one low score in math computation.  (Id.)  The Hearing Officer concluded that one single low score does not result in a finding of a specific learning disability.  (Id.)  Further, the Hearing Officer did not make this finding only based on a simple examination of a report card or mere advancement from one grade level to the next.  She based it on a comprehensive evaluation of Zion by the District, which included a Wechsler Intelligence Scale for Children and Full Scale IQ score.  (Doc. No. 3-7.)  While the average to high average results of this evaluation are consistent with Zion's good report cards, the report cards were not the sole records used to support the Hearing Officer's conclusion.  (Id.)  Thus, the Hearing Officer's determination was correct: Zion did not meet the first prong of the eligibility test based on a specific learning disability.

ii.   Other Health Impairment

The District does not dispute that Zion has an Other Health Impairment because he has been diagnosed with ADHD.  (Doc. No. 21 at 5.)

Under the IDEA, an OHI is defined as a student having:

limited strength, vitality, or alertness, including a heightened alertness to environmental stimuli, that results in limited alertness with respect to educational environment, that is . . . due to . . . attention deficit disorder or attention deficit hyperactivity disorder . . . and adversely affects a child's educational performance.

34 C.F.R. § 300.8(c)(9).

Here, the Hearing Officer correctly identified Zion as a student with an OHI.  The Hearing Officer stated that:

The Parent and the District agree that the Student was medically diagnosed . . . as having ADHD, which is listed under the IDEA OHI classification.

(Doc. No. 3-3 at 16.)  The District plainly identified Zion as a student who has ADHD, which is classified as an OHI or disability under the IDEA.  (Id.)  Thus, the Hearing Officer appropriately concluded that Zion met the first prong of the eligibility test for an IEP under the IDEA.  (Id.)

      b.  The Hearing Officer Correctly Found that Zion does not need Specially Designed Instruction

However, the fact that a student is diagnosed with ADHD, an other health impairment, does not mean that he or she automatically qualifies for an IEP.  The student must also require specially designed instruction to benefit from his education as a result of the disability, or, in this case, the OHI.  See 20 U.S.C. § 1401; 34 C.F.R. § 300.8(a).  The IDEA defines specially designed instruction as

. . . adapting, as appropriate to the needs of an eligible child under this part, the content, methodology, or delivery of instruction (i) to address the unique needs of the child that result from the child's disability; and (ii) to ensure access of the child to the general curriculum, so that the child can meet the educational standards within the jurisdiction of the public agency that apply to all children.

34 C.F.R. § 300.39(b)(3).

Here, the Hearing Officer correctly found that Zion was ineligible for specially designed instruction.  (Doc. No. 3-3 at 16.)  As a result of a thorough evaluation by the District, Zion was found to have average to high average composite scores when assessing his functioning in the

areas of verbal comprehension, visual spatial reasoning, fluid reasoning, working memory, and processing speed.  (Id. at 17.)  Further, Zion's Cognitive Profile Index was assessed to be in the average range for problem solving and reasoning.  (Id. at 18.)  While Zion had a low math score, his overall academic measure in a variety of subjects ranged up to above average.  (Id.)  Plaintiff's parent notes that teachers' reports from Cardinal O'Hara included concerns regarding inattentiveness.  (Doc. No. 20-3 at 17.)  However, looking at Zion's evaluation as a whole, the record fails to show that Zion requires specially designed instruction to receive a meaningful benefit from his education.  (See Doc. No. 3-3 at 19.)

In addition, the Court gives "due weight" to the credibility determinations of the Hearing Officer.  During the evaluation, the District conducted a Comprehensive Executive Function Inventory ("CEFI").  (Doc. No. 3-9 at 80.)  This inventory uses a rating scale that quantifies parent, student, and teacher observations of the student's executive functioning.  (Id.)  When completing the ratings for the CEFI, Parent rated Zion in the low to well below average range.  (Id.)  The ratings provided by Parent were inconsistent not only with the ratings of his teachers, but also Zion's self-ratings.[10]  (Doc. No. 3-9 at 75-80).  Generally, Parent answered similar questions inconsistently and was found to "underestimate[] [Zion's] . . . functioning."  (Id. at 80.)  Consequently, the District's Psychologist found that it was "more difficult to give [Parent's testimony] weight."  (Doc. No. 3-3 at 17.)  Overall, the Hearing Officer found the testimony of Parent less persuasive than the District's proffered testimony.  (Id. at 12.)  As such, because these findings deserve "due weight," the Court will not disturb the credibility determinations of the Hearing Officer.  Thus, the Hearing Officer did not err when finding that Zion does not need

---

[10] Generally, during the CEFI, Zion rated himself in the high average to average range.  Regarding the category "organization," he rated himself as low average.  (Doc. No. 3-9 at 80.)  Similarly, his teachers rated him in the average range with a weakness in organization.  (Id. at 85.)

specially designed instruction to benefit from his education and is therefore ineligible for an IEP under the IDEA.

     c.   <u>Zion was not Denied a FAPE due to the Delay in the District's Evaluation of Zion or Issuance of the 504 Plan</u>

 Plaintiff contends that the District denied Zion a FAPE when it "failed to evaluate Zion before the 2020-21 school year." (Doc. No. 20-3 at 18.) Specifically, Parent points to the gap between her February 2020 Evaluation Request and the District issuing in August 2020 a Permission to Evaluate Form and the evaluation of Zion finally occurring in October 2020. (<u>Id.</u>) She also contends that the District's issuance of the 504 Plan was untimely. (<u>Id.</u> at 25.) Conversely, the District argues that the in-person evaluation was not available in Spring of 2020 due to the shutdown of schools in the wake of the COVID-19 pandemic, and neither this delay, nor the delay in issuing the 504 Plan, resulted in a denial of a FAPE. (Doc. No. 21 at 13.)

As a result of the delay, Plaintiff seeks tuition reimbursement for Zion's education at Cardinal O'Hara High School. But Parent must show that the District violated the IDEA in such a manner as to cause "substantive harm — either by depriving [the student] of an educational benefit or significantly impeding the Parents' participation in the decision-making process regarding [the student's education]." <u>C.H.</u>, 606 F.3d at 67; <u>see</u> <u>also</u> <u>A.B. through Katina B. v. Abington Sch. Dist.</u>, 841 F. App'x 392, 396 (3d Cir. 2021) (quoting 20 U.S.C. § 1412(a)(10)(C)(ii)).

Here, Parent alleges that the District denied Zion a FAPE in violation of the requirements of the IDEA by failing to offer and have in place an IEP, or even a 504 Plan, before the start of school. (Doc. No. 20-3 at 18-22.) The Hearing Officer concluded that this delay was reasonable in light of the circumstances surrounding COVID-19. (Doc. No. 3-3 at 17.) She reasoned that:

> The District's 2020 ER was appropriate, albeit delayed by the COVID shutdown in Pennsylvania which made it impossible to conduct in person testing until the shutdown was lifted. The District was caught in a tricky situation, as were other districts around the Commonwealth, and put forth its best efforts in light of the latitude it had available to it at the time the evaluation needed to be conducted.

(Id.)  Because the District did not conduct a timely evaluation before the start of the school year, it committed a procedural violation of the IDEA and the Hearing Officer's finding that "the District's 2020 ER was appropriate" appears erroneous.  See 20 U.S.C. § 1412(a)(10)(C)(ii). Moreover, the delay in conducting the evaluation also resulted in the delay in issuing the 504 Plan. The only saving grace is the fact that the COVID-19 pandemic intervened, causing the delays. However, as delineated below, not every procedural violation of the IDEA is a substantive denial of FAPE.

> In C.H., the Third Circuit noted that

> In some cases, a procedural violation may rise to the level of a denial of a FAPE, entitling the plaintiff to compensatory education or tuition reimbursement. However, "[a] procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or [her] parents . . .

606 F.3d at 66.  Parent has failed to show that the procedural violations denied Zion a FAPE.  She argues that "it was not until August 20, 2020 . . . that the District issued a [Permission to Evaluate] to conduct an evaluation."  (Doc. No. 20-3 at 21-22.)  However, the record establishes that Zion lost no academic opportunities or educational benefits, and Parent remained meaningfully involved in the decision-making process.  She even rejected the 504 Plans offered by the District.  Parent only offers a conclusory allegation that the failure to evaluate Zion before the 2020-21 year constituted a "denial of FAPE as a matter of law."  (Id. at 18.)  But Parent provides no evidence to show that the District's delay in evaluating Zion or other action resulted in substantive harm to either Zion or his Parent.

2. <u>The Hearing Officer Correctly Found that Parent is not Entitled to Tuition Reimbursement because Plaintiff was not Denied a FAPE</u>

Plaintiff, acting by and through his Parent, seeks tuition reimbursement for his education at a private school, Cardinal O'Hara High School. In the Third Circuit, courts look to the <u>Burlington</u>-<u>Carter</u> test to determine whether a students' parent is entitled to tuition reimbursement for attendance at a private school. <u>See</u> <u>Sch. Comm. Of Burlington v. Dept. of Educ. of Massachusetts</u>, 471 U.S. 359, 370-71 (1985); <u>Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter</u>, 510 U.S. 7 (1993). Under this test, Plaintiff must demonstrate that (1) the public school did not provide their child with a FAPE; (2) private school placement was proper; and (3) the equities weigh in favor of reimbursement. <u>See</u> <u>Stephen O. v. Sch. Dist. of Philadelphia</u>, No. CV 20-1991, 2021 WL 6136217, at *25 (E.D. Pa. Dec. 29, 2021) (citing <u>Burlington</u>-<u>Carter</u> test). Every factor must be satisfied to be entitled to tuition reimbursement under the IDEA.

Here, the Hearing Officer appropriately addressed the first prong of the <u>Burlington</u>-<u>Carter</u> test: whether the District afforded Zion a FAPE. She concluded: "[h]aving found no violations of the IDEA . . . there is no need to consider demand for tuition reimbursement." (Doc. No. 3-3 at 23.) The record shows that the Hearing Officer correctly reasoned that Zion was ineligible for an IEP and was not denied a FAPE. Consequently, because the first prong is not met, the second and third prongs of the <u>Burlington</u>-<u>Carter</u> test need not be discussed. Thus, it was correct for the Hearing Officer to decline to consider Plaintiff's request for tuition reimbursement.

**C. Section 504 and ADA Claims**

1. <u>504 Claim</u>

The Third Circuit has held that "there are few differences, if any, between IDEA's affirmative duty and [Section] 504's negative prohibition" and have further noted that the

regulations implementing Section 504 require that school districts "provide a free appropriate education to each qualified handicapped person in [its] jurisdiction." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999). To establish a Section 504 claim, a plaintiff must satisfy a three-part test: the plaintiff must demonstrate (1) the child has a disability; (2) was otherwise qualified to participate in a school program, and (3) was denied the benefits of the program or subject to discrimination because of [the] disability. See Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

When applying the Third Circuit's three-part test, no dispute exists among the parties that Zion has a disability and is otherwise qualified to participate in a school program. Accordingly, the first and second prongs of the test are met. Even so, Plaintiff's parent has failed to show that Zion was either 1) denied the benefits of the program or 2) subject to discrimination in the District as a result of his disabilities. The record and facts set forth above demonstrates that Zion was not denied benefits of a program. He simply did not need them. Moreover, he was neither subject to nor suffered discrimination as a result of his disabilities.

Plaintiff avers that the District did not base the 504 Plan on a comprehensive evaluation of Zion's needs. (Doc. No. 20-3 at 24.) However, the record reflects that the District offered a 504 Plan in September of 2020 which was crafted in a collaborative manner with Zion's teachers, Parent, the assistant school principal, and the school psychologist. (Doc. No. 3-6 at 137.) The 504 Plan "drew upon a variety of sources," "established procedures to ensure that information . . . is documented and carefully considered," "ensure[d] that the placement decision [was] made by a group of persons, including persons knowledgeable about the child," and "ensured that the

placement decision [was] made in conformity with [statutory requirements]."[11]   34 C.F.R. § 104.35(c).

Additionally, Plaintiff contends that the District failed to offer Zion a 504 Plan before the start of the 2020-21 school year.  (Doc. No. 20-3 at 25.)  But, as noted above, the delay in providing Zion a 504 Plan before the first day of school in that year constitutes, at most, a procedural violation.  But this violation does not rise to the level of the denial of a FAPE.  And although Plaintiff argues that "the District's inaction impeded the Family's ability to decide where to educate Zion," no evidence is offered to show that delay resulted in discrimination or a denial of educational benefits or a FAPE.  Notably, the District offered Zion a 504 Plan on September 3, 2020, which Parent quickly rejected.  Classes did not begin at Cardinal O'Hara, where Zion was enrolled, until September 9, 2020.  (Doc. No. 3-3 at 22.)

Accordingly, the Court concurs with the Hearing Officer that "the evidence demonstrates that the District put forth its best efforts to do what it is required to do by law without putting the Student, teachers, or staff at risk of exposure to COVID-19 based on the knowledge it had at the time."  (Id. at 23.)  In the District, Zion had "meaningful access to educational benefits."  See M.R., 680 F.3d at 280.  For this reason, Parent's allegations that the District violated Section 504 are unavailing.  The Hearing Officer correctly found Zion was not denied a FAPE, and as a result, Parent is not entitled to tuition reimbursement under Section 504.

---

[11] Parent also claims that the 504 Plan offered by the District provided minimal support, and that Zion benefitted from the small class sizes at Cardinal O'Hara High School.  (Doc. No. 3-3 at 7.) However, the Court agrees with the assessment of the Hearing Officer that the class sizes at Cardinal O'Hara and the District's High School are relatively similar.  (Id. at 23.)  The Hearing Officer found that classes at Cardinal O'Hara can consist of up to 34 students, with an average of 27 students.  (Id. at 7.)  The District High School class sizes average between 25 and 28 students.  (Id.)  Notably, the principal of Cardinal O'Hara High School approved the District's 504 Plan.  (Doc. No. 3-6 at 67.)

2.  ADA Claim

Finally, Section 504 and ADA claims are both adjudged under the same standard. The Third

Circuit has held:

> Because the same standards govern both the . . . RA and ADA claims, we may
> address both claims in the same breath. To prevail on a violation of either of those
> statutes, the [claimant must] demonstrate that [the child] (1) has a disability; (2)
> was otherwise qualified to participate in a school program; and (3) was denied the
> benefits of the program or was otherwise subject to discrimination because of her
> disability.

Chambers ex rel. Chambers, 587 F.3d at 189 (internal citations omitted).  As noted above, the first

and second prongs of the test are clearly met.

Nevertheless, for reasons described above, Plaintiff's parent has failed to show that Zion

was either 1) denied the benefits of the program or 2) subject to discrimination in the District as a

result of his disabilities.  Thus, Parent's allegations that the District violated the ADA are without

merit and for this reason too Plaintiff was not denied a FAPE.


V.      **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc.

No. 20) will be denied. Plaintiff's Complaint (Doc. No. 1) is dismissed.  In so holding, the Hearing

Officer's Decision is affirmed. An appropriate Order follows.